Mr. Weiss you can't come to the podium so how much time do you wish to reserve for for your... I'd like to reserve five minutes your honor. Thank you and introduce yourself tell us who you represent. My name is Michael Weiss I represent the appellants and my clients are G&G Productions LLC Gabriele Israeliovici and Giovanni Nappi. You're on the clock please proceed. The NAPP. Please proceed with the argument. Be seated. No please proceed. I'm sorry excuse me. This is a very straightforward and in my mind uncomplicated appeal. The appeal is whether or not the court below conducted a trial by affidavit in connection with a motion for summary adjudication in connection with the avoidance of a constructive fraudulent transfer. As this panel is well aware there are really only three issues that a constructive fraudulent transfer will, for lack of a better word, deal with. Factual issues. One is was the value received by the debtor reasonable? Was the debtor insolvent? And or the exchange of value which is what was given and what was received was that reasonably equivalent? Which is sort of two factual components within one element as it were. In this case the only issue that's really at issue is whether or not the debtor received reasonably equivalent value or whether it gave reasonably equivalent value or whether the assets had any value at all. As we set forth in our brief we think that the assets that were transferred a group of movie scripts and movie development projects had absolutely no value and the reason they had no value is laid out in our briefs as fourfold. First, the scripts could not be developed because there was not adequate proof of title to the scripts. Two, the evidence that was adduced as to their value, this agreement with Fabrica, doesn't really prove anything because it was entered into a year after the transfer and in any event the Fabrica principal has testified that he would not have entered into the transaction at all but for the fact that my clients contributed additional assets to create some value. Last but not least is movie scripts by their very nature have a very contingent quality to them. We believe that that contingent quality requires the debtors in this case or debtor more specifically debtors in possession in this case to demonstrate that there was some reasonable likelihood that the contingencies needed to create some value for the scripts were likely to happen at some point in the future so that you could discount that present value. So we believe that the assets transferred in our argument, the assets transferred had no value. The second point is that we believe we gave value. My client advanced approximately 1.5 million dollars to the principal of the corporation, Vittorio Cecigori, who is referred to as VCG in our briefs and VCG represented in connection with those transfers that the money was going to be used for the corporations. It wasn't used for the corporations. Nonetheless, as we set forth because he was the president of the corporation, the director of the corporation and the sole shareholder of the corporation, we believe that those assets evidence an obligation of the two debtors. It was a debt. The second point is that in 2015 there was a note that was executed after all of these that had happened. Mr. Israeliovici delivered the note at the time that he received the assets. We believe that that delivery, even though the note was not a negotiable instrument, is evidence to demonstrate objectively that there was an intent to cancel the debt and that the cancellation of the debt is sufficient to create value, thereby creating a tribal issue of fact both as to the value received and the value of the assets themselves. I don't have anything really much more to say on that. I think it's a pretty straightforward question. We think that the court below engaged in what I would consider to be a trial by affidavit and took upon itself to weigh the evidence in making certain rulings. There's also another, I think, very fundamental sort of technical legal flaw in the trial court's analysis. That is, the trial court relied very heavily on excluding certain evidence based upon the parole evidence rule. The parole evidence rule, A, as we all know, is not a rule of evidence. It's a rule of balance between two parties to the contract. Well, the debtors are not parties to the contract. They're bringing the fraudulent transfer action, in this case, as a representative of the bankruptcy estate, who is not a party to the transaction where the assets were transferred to my clients from the debtors. I think Judge Hammond relied very strongly on that. She also relied very heavily on the parole evidence rule, which is the integration clause, which basically says you can't consider anything else in the contract in connection with interpreting it. Well, we're not interpreting the contract. What we're interpreting here is whether or not assets were transferred, the value of those assets, and the value of the consideration given to those assets. So, I think that's a very important consideration of either these... Counsel, can I ask you a question? Certainly. This is a constructively fraudulent case and not actual fraud. Is that correct? That's correct, Your Honor. And so on the issue of reasonably equivalent value, are you saying that the parole evidence rule never applies? That you can't, the parties to the contract can't have a fully integrated contract that identifies and says, this is the value that is being given in this contract? Yes, Your Honor. That's exactly what I'm saying because the nature of a fraudulent transfer transaction is to look beyond whatever the contract might be. What it does is it looks at the value given and the value received. And it involves a claim, if we're not in bankruptcy, if we were in the California Superior Court suing to avoid this transaction, it involves a claim by a creditor. It's not a claim of the parties to the contract. My question, can I ask, can I interrupt you just a moment? There is a dispute value of the contract, Your Honor. The question I have is a little different than that. Are we saying that it never applies in that issue on reasonably equivalent value? Or are we saying that it is based upon the agreement in this case? I would submit, Your Honor, certainly on the facts of this case. But I would say, as a general proposition, I would say it would not. Now, there might be circumstances, I just have to be speculating, where there could be a set of facts where the question of the actual performance of the contract and the value given under the contract require an interpretation of the contract. But that would be speculating. But for certain, it does not apply in this case. And why is that? Because we're talking about the value of the assets. We're not talking about interpreting the parties' meanings under the contract. The bankruptcy state has two sets of rights. One, the set of rights that it gets under 541, which are the rights of the debtor itself. And two, the rights that it gets under sections 542 to 549, which are the rights of the estate, which are often described as the debtor, the trustee, or the debtor in possession steps into the overshoes of the debtor and has rights beyond the debtor. Those are the rights that are being litigated here. Those overshoe rights. We're not litigating the meaning of the contract. I certainly would agree that to the extent that one wants to argue that there are statements in the contract that go to what the alleged value transferred or not transferred is, that those are admissions. And they're not binding conditions, but they're certainly admissions. Certainly, there had been a representation that a dollar was given but $10 million was received. In reality, that's what a bankruptcy court should be looking at. The reality of the transfer. Because it's all viewed from the perspective of the creditors. I think I've gone past my ten minutes here. Well, yes, you've got four minutes and a half to come. We'll come back to you. Let's hear from your opposition. Thank you, Your Honor. Good afternoon, Your Honor. Murray Katz appearing on behalf of the Capellians and the debtors in this case. The only question in this case is whether reasonably equivalent value was paid. Everybody agrees that's the narrow thing at issue. And it's a three-step analysis that's clear under the BAP's decision in Pringle and Judge Montali's decision in Brobeck. We look at three things. Was any value given at all? That's number one. Number two, if there was value... I think throwing Montali at us this early in the argument is a blue stick. Apologies, Your Honor. Let's go. Number two, Your Honor, is whether the value given, if it was given, was in exchange for what was transferred. That's number two. And then finally, number three, whether what was transferred was equivalent in value to what was received by the debtors. And so the first question, was value given? And if we don't get past the first question, we don't even need to proceed to the other steps. Brobeck makes that clear. So we have evidence that there was no value given. We have the assignment agreement itself. It's fully integrated. And it says the sole consideration for this transfer is a dollar. That's value, isn't it? Well, no, it's not. And the assets transferred were worth a dollar. Well, there's a distinction in the cases, Your Honor. And that is between sufficient value that rises to the level of mere consideration to support a contract, like a peppercorn, or reasonably equivalent value. And we've cited several cases that distinguish between the two, but you don't have to look at my cases or take my word on it. The appellant's  value was a dollar, which is nominal. So they concede it was nominal value, and then you get into the cases that say... But if I were to sell you a can of Coke for 50 cents, you wouldn't ignore the 50 cents just because it's only 50 cents, right? In that context, I wouldn't, Your Honor. Okay. That's right. But here, where the value was a dollar, and it's conceded that that is nominal, and the cases tell us once it's nominal, you don't get beyond that step, we don't have to go any further. The key question, though, assuming you get beyond the first step, is, was it in exchange? Because what they're arguing is there was this cancellation of a $1.5 million note. Well, that standing alone doesn't get them there. It must have been in exchange for the transfer of the assets. And so, and this is really critical, because there is no evidence it was in exchange. You know, we know from Brobeck and the other cases that in order to have it be in exchange, it either has to be at the time of, it can't be after, or if it's coming later, it must have been bargained for in the initial contract. Well, we have the initial contract, and it's not that long, and we know really clearly in there, it doesn't say later on you're going to cancel some debt, even though the debt's mentioned. So clearly it wasn't bargained for as part of some later transfer. So the question is, was it really in exchange for? So we look at the temporal component, and we have, we don't know if we have the words of Brobeck which say if it's after, citing Collier, if it comes after, it's not in exchange for. It wasn't bargained for. We have the agreement, which tells us really unequivocally it wasn't bargained for as part of this deal, clearly, even if it happened. But not only that, we have the words of their declarant, Vittorio Cecigori himself, in his declaration saying, I received it after, quote, after. That's his words, the same words used by Collier and Brobeck. It came after. It wasn't connected to. And clearly this integrated agreement, which shows us everything that was bargained for, forget about the true nature of the transaction for a minute, but just what was the bargain? Was this bargained for? The answer is no. Now, we have a lot of other evidence, too, that this debt wasn't canceled. We have the note, right, being transferred without even the knowledge of the person who was holding it. He later, yeah. Yeah, you've got other evidence that conflicts with that, though. So I'm looking at conflicting evidence and summary judgment motion and thinking, why do we have a summary judgment ruling? Why didn't we go to trial on this? It seems like there's disputed issues of fact here. I'm not sure what the conflicting evidence is in favor of the fact that it was, quote, in exchange for the assets. Is that just the mere delivery on its own? The delivery of the note. So what we have here, though, well, we have proofs of claim, though, filed under penalty of perjury saying, I'm owed the money. Those are sitting there today, right now on the docket. Two proofs of claim attaching the note and saying, I am owed all of this money plus interest, plus I have the right to use it as an offset. If you keep pointing to evidence in favor of your position, that doesn't necessarily persuasive that that should have been granted summary judgment on those issues. I mean, here we have the attorney representing a film company that has produced a bunch of really iconic Italian films arguing that the scripts for these films have no value. That makes no sense to me. Clearly, they have value. I don't know what the value is, but I know it's not one dollar. You don't get to interrupt me. Apologies, Your Honor. So the question, it seems to me, whether, at least in this case, whether the parole evidence rule was applied to exclude all of this conflicting evidence. Is that correct? I don't believe it was, Your Honor, because if you look at the judge's order and just retrieve it, Your Honor. She clearly considered all of the declarations and she considered, she has a separate section in her order, was the note discharged? And she concluded it wasn't. And she even cites to the declaration and footnotes it, referencing the return delivery of the note. And this isn't really a battle of affidavits in the sense that we put in some declarations and they put in some of their declarations, the agreements they signed. There is no battle here. We've taken their testimony. And remember, too, they specifically Isn't it their position that they entered into an agreement where they made a loan for $1.5 million and they got this security for that and basically said, well, if the loan isn't going to be paid by the state, these and that this second, this first assignment that we're looking at is the effectuation of that sort of clause of the first loan agreement. And then what they want to say is, and by taking the assets, I agreed to cancel the debt. And you're saying, no, that's not true. You never agreed to cancel the debt. And there's other evidence to point to that. Aren't those disputed issues of material fact that need to be resolved? And the only way you get around that is by saying, well, the parole evidence prevents them from offering this evidence of some kind of other agreement or additional agreement or additional terms that are contrary to the terms of the actual integrated agreement. Please proceed. I think parole evidence certainly prevents them from arguing that, but it's not the only argument or not the only way you get there. Because the other way you get there is you look at what they've said and what they've done. It's significant that they filed a proof of claim. It's significant, too, that in their initial briefing, all of the briefing in the bankruptcy court, this argument that they're raising now for the first time, which really should be raising for the first time in their opening brief here, is that, okay, there's no subjective intent to cancel the debt. And objectively, under the commercial code, it wasn't canceled. Right? That's clear as day as a matter of law. Returning an original of a non-negotiable instrument doesn't do anything for you. Not only that, his testimony was that he didn't even know what that rule was at the time he returned it. He didn't return it himself. Somebody else returned it, returned the original note. Explain to me in the commercial world that we're talking about, why would you transfer the script rights to some iconic Italian movies for $1? Why would that be a commercial transaction? I don't have the viewpoint into what Mr. Gorey was thinking other than potentially to attempt to put them out of the reach of your creditors, but we're not here on an actual fraudulent transfer. It's just constructive fraud. All I have is the agreement that they memorialized with the assistance of counsel and the fact that this $1.5 million at some point was canceled, but it was either after or, as you've described it, it may have been long before. Right? The note dates back to 2012. The transfer was in 2015. But the law is it must be in exchange for. That's a critical stand-alone element. And here, just saying that it happened is not enough. It had to have been at the same time as part of the bargain. That's what the cases say. And here, we know what the bargain was, and clearly the parole evidence rule, and they concede this in their brief, tells us what the bargain was. It may not tell us how much was actually paid, but in terms of the bargain, we know what it was. It referenced the note. It didn't cancel the note. One of the problems with the parole evidence rule is that once it starts getting too strictly applied, you end up with absurd results, unfair results. And tell me why the application of a parole evidence rule to say that the script rights for these films are being transferred for a dollar. Isn't that an absurd result? Isn't that a harsh result? Isn't that the kind of result that you don't apply the parole evidence rule to get to? You listen to the appellant's arguments, and they're worthless. They had no value, so why not just take them for a dollar? They were a throwaway asset. That's still their argument today. It's been their argument all along. And so they paid no consideration. What they conceded is nominal, nothing consideration. The judge didn't buy that, and neither do I. But that the assets are worthless. Yeah. I don't know what they're worth. I mean, a couple of fairly famous movies involved in these scripts, and important movies in terms of the Italian movie industry. And so to say that the script rights to those films have no value is kind of, I mean, maybe, maybe not. I mean, we may get better movies coming back someday. Maybe, Your Honor. I think the other issue is this. This entire argument about the parole evidence rule and its inapplicability. I went back and looked at the briefs down below this morning. It wasn't raised at all in their briefs before the bankruptcy court. And this argument that it doesn't apply to fraudulent transfer was not raised. I've looked at the transcript. It was not raised below. I've looked at the appellant's opening brief to see was it raised there, as it should have been. Not raised there either. I look at this court's, the BAP guidelines, November 2017 edition. Generally, an appellate court will not consider matters that are not specifically and distinctly argued in an appellant's opening brief. And it wasn't there. Even though it was clearly at issue, the parole evidence rule was part of Judge Hammond's decision. You're kind of a double parole evidence litigant, huh? You want to exclude it at the trial level, and now you want to exclude the evidence? Let me ask you a question. Let's suppose that this agreement had said that in consideration of $4 billion in cash, the receipt whereof is hereby acknowledged, I give you these assets. Would you concede that that would kill your case? No. It depends on whether they actually paid it in connection with the transfer. I'm stipulating a contract that says receipt whereof is hereby acknowledged. The recital incorporates, it says the money's been paid. Can you look past the recital in that circumstance? I would, Your Honor, because I would get to prong two of the analysis, and I would say what was actually given to me in exchange as part of this bargain? And if the answer is nothing, if the answer is $4 billion, then I've clearly lost. But if the answer is nothing was in exchange at the time, that temporal component, then no. I'll change my hypothetical. I acknowledge receipt right here and now of $4 billion in exchange for the assets I'm giving you. And here's the assets I'm giving you. Would you agree that that recital would spike your case, even if it were false? No, Your Honor. Why not? Because I would get to prong three. And then I would look at what did I actually get? How do you get past the parole evidence point? Well, I go to the true nature of the transaction. Okay. So why don't we do that when the recital is the consideration it's only a dollar? Because the true nature of the transaction here is missing the in-exchange temporal component. And the only evidence that there was a cancellation of the note is not even testimony that that was the intent. It's the opposite. I think you've just walked away from the parole evidence rule. I don't see how the parole evidence rule still factors into the analysis you're just giving me. I think the parole evidence rule tells us what the bargain was. The true or what the case is called the true nature of the agreement. Right. So in this case, it's a dollar. I'm stipulating to hypothetical where it's $4 billion and it comes right out and says it really is $4 billion and it's really paid right down it's really an exchange. And I believe when you get to the third prong which is kind of the true nature prong, was that actually received? So why can't we get to the third prong when it's a dollar or $5 or $100? You can only if you've satisfied the first two prongs. And the second prong is in exchange for. And there's no evidence this was in exchange for that. But it was a dollar. So you're looking beyond the terms of the agreement then? Well then we get into the question of were the assets worth more than a dollar. And for that I just rely on their testimony. Their testimony was these assets substantially increased the value of things I already held. To me that says this had value to a buyer out there. And we know in bankruptcy court you only need one buyer that thinks these things are worth something and they're worth something. We don't give away assets just because they only have value to a buyer. So if I only had to get over the hurdle of were they worth over a dollar, putting aside all their testimony about what it's worth, interest in G&Gs, the operating agreement says, all of that. The fact that they concede that it had a lot of value to them means it's worth more than a dollar. And more importantly, and the court can take judicial notice of this because we just filed it in the last week. It's set for December 6th. We have a third party buyer saying I want an option to buy one of your G&Gs. I want to make sure I get that right. And the payment is more than a dollar. Thank you, counsel, your time is up. Thank you, your honors. So you have some time. Four minutes and 31 seconds. Thank you, your honor. I'd like to go back to the the notion that First of all, the notion that no value was given by my clients for this transfer. There's two issues. Issue number one is was it given in exchange for the assets? Well the note was transferred physically at or about the time that the transactions took place. Maybe after. After could mean a day after and after could mean three weeks after. But we would also point out to you, your honor, as you noted that the original agreement said you know if you don't pay this million dollars 1.5 million dollars by April 15th 2000 and by April 1st 2015 then you know you have to give these assets back in exchange for that money that was given before. And based on that, we think that there's a at a minimum a tribal issue of fact as to whether value was given. In any event, it was given at or about the time. All we have to prove is that there was an intent to cancel the note. That argument was made clearly at oral argument in front of Judge Hammond. We made that very very specific point. I tried to explain to her honor that basically it's kind of like a pair of shoes. One shoe by itself isn't worth much. Arguably worth nothing. Two pairs of shoes are worth something. That's how my client perceived the value of these things and it's also how Mr. Pavlovich the principal of Fabrica perceived these things. Without Mr. Izrailovich he had no interest in that asset. None. And that's why it didn't have any value. And I think another point here which is glossed over by the appellees in their brief is that these are contingent assets. There was no evidence of when the contingencies were met to demonstrate whether they had any value at all and what it would take for the contingencies to be met. As we said these assets are more in the vein of a corporate opportunity and if you have no ability to do what it takes to take advantage of a corporate opportunity the opportunity has no value. So if a debtor can't take advantage of a corporate opportunity and it transfers the corporate opportunity there's no fraudulent because from the perspective of the creditors they're no worse off before the transaction than after the transaction. That's basically what I have to say. If the panel has any further questions I'm glad to answer them. We're good. Thank you very much. This matter is deemed submitted. We'll issue an opinion. Please call the next case.
judges: Kurtz, Faris, Brand